THE STATE OF WASHINGTON, *Respondent,* v. DANIEL MAURICE DAULT, *Appellant.*

THE STATE OF WASHINGTON, *Respondent,* v. JOHN HOWARD WILDER, *Appellant.*

*Michael R. Pickett,* for appellants.

*Curtis Ludwig, Prosecuting Attorney,* for respondent.

MUNSON, J.—This is a second appeal for John Wilder and Daniel Dault.[1] The facts of the case are set forth in our first opinion, *State v. Dault,* 19 Wn. App. 709, 578 P.2d 43 (1978), and will not be repeated here other than as needed for this opinion. On the first appeal, the case was reversed and remanded. Upon retrial, Wilder was again convicted of first–degree murder and Dault of second–degree murder.

At the second trial, the State called John Ramirez, a key State witness. Ramirez had been present at the killing of Larry Cannon but had been granted immunity prior to the first trial and had testified against these defendants. At the second trial, after a few preliminary questions, Ramirez stated he no longer had any recollection of the events surrounding the killing. The court recessed in order to allow him to read the transcript of his former testimony. When Ramirez returned he said that his reading of the transcript had not refreshed his memory. Ramirez was questioned by both the prosecutor and defense counsel. The trial judge warned him of possible contempt proceedings if he refused to testify; however, Ramirez continued to maintain that he had no independent recollection of the events. The trial judge then granted the State's motion to have the transcript of Ramirez' prior testimony read to the jury, ruling that Ramirez was an "unavailable witness." The trial judge told defense counsel Ramirez could be placed on the stand and cross–examined extensively regarding his present testimony, that is, his lack of memory. He was not recalled to testify.

Both Wilder and Dault argue that Ramirez was not "unavailable" under the recognized hearsay exceptions permitting a witness' prior testimony if the witness is dead,

---

[1] Although Wilder and Dault appealed separately, we are consolidating this opinion since the issues raised by both are similar.

insane or absent from the state or the court's jurisdiction. The hearsay and right–to–confrontation "exceptions are not static, but may be enlarged from time to time if there is no material departure from the reason underlying the constitutional mandate guaranteeing to the accused the right to confront the witnesses against him." *State v. Ortego,* 22 Wn.2d 552, 563, 157 P.2d 320, 159 A.L.R. 1232 (1945). *See also State v. Kreck,* 86 Wn.2d 112, 116–18, 542 P.2d 782 (1975).

In *California v. Green,* 399 U.S. 149, 26 L. Ed. 2d 489, 90 S. Ct. 1930 (1970), a State's witness who testified at a preliminary hearing had become evasive and forgetful at trial. Excerpts from the preliminary hearing were then read and admitted as substantive evidence. The court stated: "it is untenable to construe the Confrontation Clause to permit the use of prior testimony to prove the State's case where the declarant never appears, but to bar that testimony where the declarant is present at the trial, exposed to the defendant and the trier of fact, and subject to cross–examination." *California v. Green, supra* at 166–67. The court noted that the State had made every effort to introduce its evidence through the live testimony of the witness; it produced the witness at trial, swore him as a witness; and he was available for cross–examination. Whether the witness then claimed a loss of memory or simply refused to answer, "nothing in the Confrontation Clause prohibited the State from also relying on his prior testimony to prove its case against" the defendant. *California v. Green, supra* at 168.

■ Given the fact that the State did produce Ramirez at trial, swore him as a witness and made him available for cross–examination, we find the admission of his prior testimony proper. His lack of memory was a "contingency of equal preventive force and gravity" as death, insanity or physical absence. *State v. Ortego, supra* at 564. The trial judge's hands should not be tied where a witness does not deny making the statements, nor their truth, but merely alleges a loss of memory. *See United States v. Collins,* 478 F.2d 837, *cert. denied,* 414 U.S. 1010, 38 L. Ed. 2d 248, 94

S. Ct. 373 (5th Cir. 1973). We find compliance with the confrontation clause of both the federal and state constitutions. *See also Commonwealth v. DiPietro,* 367 N.E.2d 811 (Mass. 1977). We find no error.[2]

Both Wilder and Dault contend the pretrial publicity meets the relevant criteria of *State v. Crudup,* 11 Wn. App. 583, 524 P.2d 479 (1974), and the trial court erred in not granting their motion for change of venue. The newspaper articles submitted to this court do not reveal any articles of an "inflammatory nature." Further, Wilder and Dault had no difficulty selecting a jury; in fact, the trial judge noted in denying the motion that he gave counsel the opportunity to interview and voir dire prospective jurors in camera and they chose not to. Of the jurors drawn for the panel only three were excused for cause, one of which was because of pretrial publicity. Defendants did not find it necessary to exhaust their peremptory challenges. The record does not reflect any prejudice to the appellants due to pretrial publicity.

At the first trial, Wilder, Dault and a third defendant were charged with first–degree murder. Wilder was found guilty of first–degree murder, Dault of second–degree murder and the third defendant was acquitted. At the second trial, Wilder was again convicted of first–degree murder. Because Dault had been acquitted of first–degree

---

[2]Although the Rules of Evidence recently adopted by Washington were not in effect at the time of the second trial, the rules now provide for the very situation which arose in this case. ER 804(a)(2) and (3) state:

(a) . . . "Unavailability as a witness" includes situations in which the declarant:

. . .

(2) Persists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so; or

(3) Testifies to a lack of memory of the subject matter of his statement;

. . .

*Cf. Stone v. State,* 85 Wn.2d 342, 347 n.2, 534 P.2d 1022 (1975). These additions are identical to the Federal Rules of Evidence adopted in 1971. *See* 4 J. Weinstein and M. Berger, *Evidence* ¶ 804(a)[01], Comments at 804–35 –37 (1979), and 11 J. Moore, *Federal Practice* § 804.03[3] at VIII–244 –245 (1976), and cases cited therein.

murder at the first trial, the State was prohibited from trying him again for first–degree murder under the principle of double jeopardy. *State v. Schoel,* 54 Wn.2d 388, 341 P.2d 481 (1959).

The State's theory, supported by Ramirez' testimony, was that Wilder, Dault, Ramirez and John Richards had a prearranged plan to kill Larry Cannon. Ramirez testified that he, Dault and Richards abandoned the plan, but Wilder did not. Subsequently, Dault and Cannon got into a fight, culminating in a blow to Cannon's head with a metal bar wielded by Dault. Wilder then injected an allegedly fatal dose of heroin into Cannon's still–moving body. Since Cannon's body was not found for 18 months, the injection as a cause of death, or as a contributory factor, could not be shown. No objection was made when evidence of the injection was introduced. The State's position was that Wilder with premeditated design aided and abetted in the murder of Cannon.

Wilder contends an aider and abettor can be charged with no higher crime than the principal. Under the former aiding and abetting statute, Laws of 1909, ch. 249, § 8, p. 892[3] (formerly RCW 9.01.030, repealed by RCW 9A.98-.010(3), effective July 1, 1976), in effect at the time of the homicide and first trial, two defendants charged jointly as principals with proof that one acted as aider and abettor were both equally guilty as principals. *State v. Boast,* 87 Wn.2d 447, 553 P.2d 1322 (1976); *State v. McCaskey,* 55 Wn.2d 329, 347 P.2d 895 (1959); *State v. Cooper,* 26 Wn.2d

---

[3] "Sec. 8. *Principal Defined.*

"Every person concerned in the commission of a felony, gross misdemeanor or misdemeanor, whether he directly commits the act constituting the offense, or aids or abets in its commission, and whether present or absent; and every person who directly or indirectly counsels, encourages, hires, commands, induces or otherwise procures another to commit a felony, gross misdemeanor or misdemeanor, is a principal, and shall be proceeded against and punished as such. The fact that the person aided, abetted, counseled, encouraged, hired, commanded, induced or procured, could not or did not entertain a criminal intent, shall not be a defense to any person aiding, abetting, counseling, encouraging, hiring, commanding, inducing or procuring him." *See* RCW 9A.08.020.

405, 174 P.2d 545 (1946); *State v. Nolon,* 129 Wash. 284, 224 P. 932 (1924). Further, a defendant may be found guilty as a principal or as an accessory even though he is the only one charged if there is proof of the commission of the crime. *State v. Carothers,* 84 Wn.2d 256, 525 P.2d 731 (1974); *State v. Sutherland,* 24 Wn. App. 719, 604 P.2d 957 (1979). An accessory may also "be convicted notwithstanding the fact that the principal actor has not been tried or has been tried and acquitted." *State v. Nikolich,* 137 Wash. 62, 66, 241 P. 664 (1925). *See United States v. Coppola,* 526 F.2d 764 (10th Cir. 1975); *People v. Gordon,* 10 Cal. 3d 460, 516 P.2d 298, 110 Cal. Rptr. 906 (1973).

Where the principal has been tried and convicted of a lower degree of a crime, an aider and abettor can be tried and convicted of a higher degree of a crime if the facts support that conviction. As noted in W. LaFave, *Principles of Criminal Law,* ch. 11, § 3, at 528 (1948):

> To determine the kind of homicide of which the accomplice is guilty, it is necessary to look to his state of mind; it may have been different from the state of mind of the principal and they thus may be guilty of different offenses.

1 R. Anderson, *Wharton's Criminal Law and Procedure* § 116, at 253–54 (1957). *See also* R. Perkins, *Criminal Law,* ch. 6, § 8(D), at 670–71 (2d ed. 1969); Annot., *Acquittal of principal or conviction of lower degree of offense as affecting prosecution of aider or abettor,* 24 A.L.R. 603 (1923); *State v. Lee,* 91 Iowa 499, 60 N.W. 119 (1894); *Christie v. Commonwealth,* 193 Ky. 799, 237 S.W. 660, 24 A.L.R. 599 (1922).

We find no error in the trial court's denying Wilder's motion to reduce the charge against him to second–degree murder given the peculiar facts of this case. The evidence supports a finding that Wilder aided and abetted another with a premeditated intent to kill Cannon. He initiated the plan, assembled the cast of players, encouraged the act, injected the victim after the blow was struck, and participated in the disposal of the victim's body. The jury could

have believed Wilder had the requisite premeditated intent, even though the principal, Dault, did not. The jury at the second trial could find Dault was guilty of no more than second-degree murder. Thus, the guilt of an aider and abettor does not necessarily depend upon the guilt of the principal, and the acquittal of the principal of first-degree murder does not operate to acquit the aider and abettor of that degree of homicide. *State v. Lee, supra.*[4]

■ Wilder also contends that the Court of Appeals by reversing and remanding the first case "equitably acquitted" him of first-degree murder. The court reversed and remanded based upon a constitutionally erroneous instruction; there was no acquittal, equitable or otherwise.

Dault contends the trial court erred in allowing impeachment of him by using prior statements of his defense counsel. This same issue was presented to this court on the first appeal. There was no material difference between the introduction of the statements at the first trial and the second; thus, the matter was resolved on the first appeal. We find no error.

Judgment affirmed.

GREEN, C.J., and ROE, J., concur.

Reconsideration denied April 8, 1980.

Review denied by Supreme Court June 20, 1980.

---

[4]We note this question has been raised in federal court pursuant to a federal statute. *See United States v. Standefer*, 610 F.2d 1076 (3d Cir. 1979), *cert. granted*, 444 U.S. 1011, 62 L. Ed 2d 640, 100 S. Ct. 658 (1980), in which the questions presented are: (1) May a defendant be convicted of aiding and abetting when the sole named principal has been acquitted of the substantive offense with which aider and abettor is charged? (2) Does the Court of Appeals interpretation of 18 U.S.C. § 2 (1976) create a new substantive crime not intended by Congress by allowing aider and abettor to be convicted when principal is acquitted, by eliminating need to prove that aider and abettor had specific intent?