[Nos. 20813-0-II; 21767-8-II.    Division Two.    February 26, 1999.]

THE STATE OF WASHINGTON, *Respondent*, v. JOHN KENNETH STEIN, *Appellant*.

*In the Matter of the Personal Restraint of* JACK K. STEIN, *Petitioner.*

*William D. Hutcheson*, for appellant (appointed counsel for appeal).

*Jack Stein*, pro se.

*Arthur D. Curtis, Prosecuting Attorney*, and *Dennis M. Hunter, Deputy*, for respondent.

SEINFELD, J. — Jack Stein appeals his convictions of three counts of attempted murder and one count of burglary. We conclude that the court's instructions erroneously allowed the jury to convict Stein on the basis of vicarious liability without finding that he was legally accountable as an accomplice.[1] Because this is prejudicial error, we reverse.

## FACTS

Jack Stein believed that a group of people, including his father's appointed guardian, Ned Hall, and his father's long-term companion, Thelma Lund, were conspiring to

---

[1]Stein raises numerous other issues in his appeal and in his Petition for Habeas Relief, which we have consolidated with his direct appeal.

control and deprive him of the substantial assets in his father's estate. As a result, in 1983, he asked his stepson, Michael Norberg, if he could find someone who "could arrange an accident for these people that were involved." Stein said that he would pay $10,000 for each person eliminated.

The relationship between Stein and attorney Hall continued to deteriorate and in the spring of 1987, Stein gave Norberg "flash cash" to use in enticing one of his friends to help. After Norberg "flashed" a large amount of cash, Richard Bailey agreed to do a "job."

Stein provided Norberg a key to Lund's home and in April 1987, Lund was severely beaten and strangled to death in her home. Norberg later testified that Bailey went into Lund's trailer to threaten her, but killed her instead. But Bailey said that Norberg killed Lund in her trailer while he hid in the bushes.

After Lund's murder, Stein took Norberg to Hall's hunting cabin in Oregon and discussed it as a potential spot for an isolated confrontation. Norberg said that he gave Bailey the "exclusive rights" for the "hit" of Hall to satisfy Bailey's demands for payment for the Lund killing.

In June 1987, Bailey, Norberg, and others participated in three separate unsuccessful attempts to kill or intimidate Hall. The first involved Bailey, Norberg, Gordon Smith, and Steve Conley. The foursome went to Hall's house armed with bottles filled with a Naptha soap and gasoline mixture. They intended to "scare Ned Hall" by igniting the bottles. Bailey testified that he and Smith carried the bottles to the edge of Hall's backyard, but then ran away leaving the bottles behind.

The second attempt was three to five days later. Bailey testified that he and Smith went to Hall's house after Norberg provided them each with a handgun and promised to pay Bailey if he killed Hall. Hall said a man rang his doorbell at 4:30 A.M. and asked to use the telephone; Hall did not open the door. Later, another man rang Hall's doorbell. Hall spoke to the man briefly through an open

window. Norberg testified that he was unaware of this second occurrence until after it happened.

The third attempt on Hall occurred on June 14, 1987, when Smith, Norberg, Bailey, and Bailey's brother went to Hall's house armed with weapons. Norberg remained at the corner of the yard to watch the road while Smith climbed into the house through the bathroom window. When Hall started to enter the bathroom, Smith fired a shot through the door, dove out the window and ran with the Baileys, leaving Norberg behind.

Norberg testified that he had told the others before leaving that night that "they weren't to do any more activity over at Ned Hall's house." He also claimed that "[t]hey weren't attempting to kill Ned Hall, they were attempting to persuade him[]" and that he had gone along to observe the "persuasion" and verify that it was completed. After this third attempt, Ned Hall resigned as Nicholas Stein's limited guardian.

Later in the summer, Stein expressed his satisfaction to Norberg and Bailey that the attempts on Hall's life had led to Hall's resignation. According to Bailey, Stein told him that payment for his services would soon be forthcoming, but that first he wanted Bailey to blow up the Clark County Courthouse and kill a judge. Stein also indicated that "he still wanted Ned Hall done in."

Following an investigation, the State charged Stein with the following criminal counts:

I. conspiracy with Michael Norberg, Gordon Smith, and Richard Bailey to commit first degree murder, RCW 9A.28.040(1) and (3)(a);

II. felony first degree murder of Thelma Lund, RCW 9A.32.030(1)(c);

III. aggravated first degree murder of Thelma Lund, RCW 9A.32.030(1)(a), based upon the aggravating factors of solicitation, RCW 10.95.020(5), and commission of the murder during the course of burglary, former RCW 10.95.020(9)(c) (1981);

IV.-VI.    criminal attempts to commit the first degree murder of Charles (Ned) Hall on June 1, 1987, between June 2 and June 13, 1987, and June 14, 1987, RCW 9A.28-.020(1) and (3)(a);

VII.    burglary in the first degree, RCW 9A.52.020.

Ultimately, the State based Counts II through VII upon vicarious liability. RCW 9A.08.020.

The jury acquitted Stein of Counts I through III but convicted him of Counts IV through VII, the three attempts to murder Ned Hall and the burglary. The trial court sentenced Stein to 180 months for each count of attempted first degree murder and ordered that he serve the sentences consecutively.

In this appeal,[2] Stein claims that the trial court erred in (1) instructing the jury on vicarious liability; (2) denying his motion to remove trial counsel and trial counsels' motion to withdraw; and (3) allowing another judge to testify about earlier civil proceedings involving Stein. Stein also claims that (4) the prosecuting attorney's precharging bias violated the appearance of fairness doctrine; (5) the State knowingly presented perjured testimony; (6) cumulative evidentiary errors denied him a fair trial; and (7) the State's evidence was insufficient as a matter of law to prove accomplice liability. (8) Stein also appeals his consecutive sentences for the three attempted murder counts, contending that they should be concurrent.

Pro se, Stein argues that: (1) the court violated his speedy trial rights; (2) recantation affidavits by key State witnesses require reversal or a new trial; (3) professional misconduct by various officials violated due process; (4) the trial court improperly denied Stein's request for appointed counsel on appeal; and (5) appellate counsel's deficient performance on his first appeal resulted in unconstitutional delay of his direct appeal. Stein raises identical issues in his Petition

---

[2]Stein first filed his appeal in 1989, but due to his failure to perfect the record, this court finally dismissed it. Stein then brought a Writ of Habeas Corpus. The federal district court, in May 1996, ordered the appeal reinstated.

for Habeas Relief, which we have consolidated with his direct appeal.[3]

## DISCUSSION
### VICARIOUS LIABILITY INSTRUCTIONS

The trial court gave the following vicarious liability instructions:

### Instruction 16

A person is legally accountable for the conduct of another person when the defendant is an accomplice of such other person in the commission of the crime.

A defendant who is an accomplice in the commission of a crime is guilty of that crime whether present at the scene or not.

A defendant is an accomplice in the commission of a crime, if, with knowledge that it will promote or facilitate the commission of the crime, he either:

(1) solicits, encourages, or requests another person to commit the crime[;] or

(2) aids or agrees to aid another person in planning or committing the crime.

The word "aid" means all assistance whether given by words, acts, encouragement, support or presence.

### Instruction 17

A person is guilty of a crime if it is committed by the conduct of an accomplice for which he is legally accountable.

A person legally accountable for the conduct of an accomplice may be convicted on proof of the commission of the crime and of his complicity therein, though the person claimed to have committed the crime has not been prosecuted or convicted or has been convicted of a different crime or degree of crime.

---

[3]We converted Stein's Petition for Habeas Relief to a Personal Restraint Petition pursuant to RAP 16.3.

### Instruction 18

A person is also legally accountable for the conduct of another person when the defendant is a co-conspirator of such other person, and the acts or conduct of the other person are a reasonably foreseeable consequence of the unlawful agreement.

### Instruction 19

When a defendant, with intent that conduct constituting a crime be performed, agrees with one or more persons to engage in or cause the performance of such conduct, he becomes a member of a conspiracy, and continues to be a member of such conspiracy, and is responsible for all the acts of all members of the conspiracy regardless of whether or not he met or conversed with all the other members of the conspiracy, and regardless of whether or not he had knowledge of the commission of such acts by other members of the conspiracy, so long as the acts of the other members of the conspiracy were reasonably foreseeable as acts done in furtherance of the agreement.

We refer to instructions 16 and 17 as the "accomplice liability" instructions and instructions 18 and 19 as the "*Pinkerton*" instructions. *Pinkerton v. United States*, 328 U.S. 640, 66 S. Ct. 1180, 90 L. Ed. 1489 (1946). The trial court also instructed the jury, in instruction 8, that:

A separate crime is charged in each count. You should decide each count separately as if it were a separate trial. Your verdict on one count should not control your verdict on any other count.

Stein argues that it was reversible error to give the *Pinkerton* instructions because the *Pinkerton* doctrine is not the law in Washington and the *Pinkerton* instructions improperly allowed the jury to hold him vicariously liable without finding him guilty of all the elements of accomplice liability. He argues, alternatively, that even if the *Pinkerton* doctrine were the law in this State, the trial court's instructions are defective because they do not include all the nec-

essary elements. Finally, Stein contends that defense counsel's failure to object to the court's instructions constitutes ineffective assistance of counsel.

The State contends that by failing to object below, Stein waived appellate review; that the *Pinkerton* doctrine is consistent with Washington law; and that any instructional error was harmless because the jury acquitted Stein of conspiracy and, thus, necessarily based its guilty verdicts on the accomplice liability instructions, not the *Pinkerton* instructions.

### A. Preservation of Issue on Appeal

The *Pinkerton* instructions immediately followed the accomplice liability instructions; together they provided two alternative theories of vicarious liability—one based upon the accomplice liability statute, RCW 9A.08.020, and the other based loosely upon the federal *Pinkerton* doctrine. Using the *Pinkerton* instruction, the jury could have found Stein guilty of murder and burglary without finding proof of each element of accomplice liability.

■ Jury instructions that omit an element of the charged crime present an error of constitutional magnitude. *State v. Scott*, 110 Wn.2d 682, 688 n.5, 757 P.2d 492 (1988) (citing *State v. Johnson*, 100 Wn.2d 607, 623, 674 P.2d 145 (1983), *overruled on other grounds in State v. Bergeron*, 105 Wn.2d 1, 711 P.2d 1000 (1985)). The error alleged here was tantamount to omitting an essential element of the charged crime. Because a failure to object to such an error below does not preclude appellate review, we consider Stein's claimed error. *Scott*, 110 Wn.2d at 685 n.5, 690; *Johnson*, 100 Wn.2d at 623.

### B. *Pinkerton* Liability in Washington

■■ Under the federal *Pinkerton* doctrine, a defendant may be liable for the substantive acts of others upon proof that (1) the defendant was guilty of conspiracy, (2) a coconspirator committed the substantive crime pursuant to

and as a reasonably foreseeable consequence of the conspiracy, and (3) the defendant was a member of the conspiracy at the time the crimes were committed. *Pinkerton*, 328 U.S. at 645-47; *United States v. Aramony*, 88 F.3d 1369, 1379 (4th Cir. 1996); *United States v. Campione*, 942 F.2d 429, 438 (7th Cir. 1991); *United States v. Alvarez*, 755 F.2d 830, 847 (11th Cir. 1985). Thus, under the *Pinkerton* doctrine, a defendant who is acquitted of conspiracy or whose conspiracy conviction is reversed on appeal cannot be liable for the substantive crimes committed by another. *United States v. Rosas-Fuentes*, 970 F.2d 1379, 1383 (5th Cir. 1992) (substantive conviction based on *Pinkerton* fails when conspiracy conviction reversed); *United States v. Nusraty*, 867 F.2d 759, 765 (2nd Cir. 1989) (insufficient evidence or acquittal of conspiracy preludes *Pinkerton* liability); *but see United States v. Gallo-Chamorro*, 48 F.3d 502, 505 (11th Cir. 1995) (conviction of substantive charge upheld although defendant acquitted of conspiracy where verdicts could be read as consistent because jury could have found that defendant was involved in more than one conspiracy).

We find no Washington cases citing *Pinkerton* as the basis for vicarious criminal liability. Further, none of the cases that the State cites hold a defendant liable for the substantive acts of a coconspirator without also satisfying the requirements of statutory accomplice liability.[4] The State also cites RCW 9A.04.060, which provides: "[t]he provi-

---

[4]*State v. Toomey*, 38 Wn. App. 831, 839-40, 690 P.2d 1175 (1984) (defendant held guilty of felony murder under RCW 9A.32.030(1)(c) based on accomplice liability for the underlying robbery); *State v. Dudrey*, 30 Wn. App. 447, 454-55, 635 P.2d 750 (1981) (defendant liable for felony murder based on accomplice liability for underlying burglary); *State v. Cooper*, 26 Wn.2d 405, 413, 174 P.2d 545 (1946) (defendant may be liable under an aiding and abetting instruction even when charged as a principal); *State v. Dault*, 25 Wn. App. 568, 573, 608 P.2d 270, 9 A.L.R.4TH 965 (1980) (an accessory may be convicted even though the principal has not been tried, or has been tried and acquitted, or tried and convicted of a lower degree of the crime); *State v. Berry*, 200 Wash. 495, 521, 93 P.2d 782 (1939) (each of four defendants admitted their individual participation in the charged criminal conduct but asserted different defense theories); *State v. McNeil*, 161 Wash. 221, 225, 296 P. 555 (1931) (in dicta only, the court stated that "[t]o show that [the defendant] counseled, aided, and abetted, it was competent to prove that he entered into a conspiracy with the others to commit the crime, and that its commission was the result of such conspiracy"); *State v. Baker*, 150 Wash. 82, 94-96, 272 P. 80 (1928) (one co-defendant's first degree premeditated murder

sions of the common law relating to the commission of crime, . . . insofar as not inconsistent with the . . . statutes of this state, shall supplement all penal statutes." Under this statute, the *Pinkerton* doctrine arguably could be applicable in Washington. But because the *Pinkerton* instructions that the trial court gave here were fatally defective, we leave for another day the question of the doctrine's applicability in this jurisdiction.

The court's *Pinkerton* instructions were defective because they failed to advise the jury that it could not hold Stein liable for the substantive acts of coconspirators unless it also found Stein guilty of conspiracy. Thus, even assuming the applicability of the doctrine, the instructions were defective because they failed to include all the doctrine's essential elements. *See State v. Smith*, 131 Wn.2d 258, 263-64, 930 P.2d 917 (1997); *State v. Eastmond*, 129 Wn.2d 497, 502-03, 919 P.2d 577 (1996).

## C. Harmless Error

The State suggests that accomplice liability and *Pinkerton* liability are virtually the same. Based upon this premise, it contends that the erroneous *Pinkerton* instructions were harmless. We disagree.

■ We presume that an instructional error is prejudicial unless the State satisfies its burden of affirmatively showing harmless error. *Smith*, 131 Wn.2d at 263-64. Failure to instruct on an element of the offense is reversible error. *Smith*, 131 Wn.2d at 265; *Eastmond*, 129 Wn.2d at 503 (omission of an element of the crime is fatal error because it relieves the State of its burden of proving every essential element beyond a reasonable doubt); *State v. Garcia*, 65 Wn. App. 681, 691, 829 P.2d 241 (1992) (reversal required even if there were valid instructions if jury might have convicted relying upon other instructions for which conviction was impermissible).

---

conviction reversed because of insufficient evidence of his premeditated intent to kill; other co-defendant's conviction affirmed, even though not present at scene of shooting, because evidence pointed to a common purpose to kill any officer attempting to enforce laws against unlawful manufacture of liquor).

The *Pinkerton* instructions in this case provided for substantially broader liability than did the accomplice liability instructions. A comparison of the elements of each is illustrative:

| Elements of Accomplice Liability Instructions 16 and 17 | Elements of Pinkerton Liability Instructions 18 and 19 |
|---|---|
| (1) D solicits, encourages or requests another to commit the charged crime; OR | (1) D has intent that criminal conduct be performed AND |
| (2) D aids or agrees to aid another in planning or committing the charged criminal conducts; AND | (2) D agrees with another to<br>(a) engage in such conduct ; OR<br>(b) cause the performance of such conduct AND |
| (3) D had knowledge his conduct would promote or facilitate commission of charged crime; AND | (3) Charged crime is reasonably forseeable consequence of the unlawful agreement. AND |
| (4) Another person committed the charged crime. | (4) A coconspirator committed charged crime; |

Thus, under the court's *Pinkerton* instructions, the jury could have found Stein liable for the attempts to murder Ned Hall if it found that (1) Stein intended the commission of *any* criminal conduct, such as assault, and (2) Stein agreed with one of the coconspirators to cause the perfor-

mance of such conduct, and (3) the murder attempts were a reasonably foreseeable consequence of the agreement to commit the lesser crime. Under the *Pinkerton* instructions, it was not necessary to prove that Stein had any involvement in or even knew about the murder attempts; he could be found guilty of the murders and burglary based upon a finding that he and Norberg agreed to assault Hall if the murder attempts were a reasonably foreseeable consequence of that agreement.

But these facts would not have supported an attempted murder conviction under the accomplice liability instructions unless the jury further found that Stein actually had knowledge that his conduct would promote or facilitate the commission of the murder attempts. Thus, a jury could have found Stein guilty under the court's *Pinkerton* instructions on evidence that would not have persuaded it to find him guilty of accomplice liability.

Further, contrary to the State's argument, the jury's acquittal on the conspiracy charge does not necessarily indicate that the jury did not rely upon the *Pinkerton* instructions. The trial court did not instruct the jurors to ignore the *Pinkerton* instructions if they acquitted on the conspiracy charge. Rather, it specifically instructed the jury that its "verdict on one count should not control" its verdict on any other count.

In addition, the State focused on a conspiracy theory of liability and did not discuss accomplice liability during closing argument. The prosecutor quoted in full instruction 19, and then argued that Stein was liable for Lund's murder based upon a conspiracy theory. The prosecutor then continued:

> [Stein]'s guilty of all the acts of all the other conspirators even if he didn't know they were being committed at the time. That liability flows from the law which says once you get into a conspiracy you're stuck. You're liable for what everybody else does.

> The law does not treat conspirators lightly. In terms of their liability for the acts of others.

Later in the argument, the prosecutor further stated:

> In a conspiracy case, ladies and gentlemen, there are a lot of pieces and a lot of parts of the puzzle, and you have to look at all of them and put them together and use your ability to do that. To draw reasonable inferences. Bailey did agree to kill Ned Hall in May of 1987, and Bailey went out and recruited still another member of this conspiracy, another member who once he enters the conspiracy Jack Stein becomes liable for his conduct if Jack Stein was a member of the conspiracy already, and that was Mr. Gordon Smith.

The accomplice liability and *Pinkerton* instructions contain significant differences and there is no basis to conclude that the jury relied on the correct accomplice liability instructions in reaching its verdicts. By permitting the jury to convict Stein under an improper theory, the court relieved the State of its burden of proving beyond a reasonable doubt every essential element of accomplice liability. Accordingly, the instructional error was of constitutional magnitude and it was not harmless; we must reverse the convictions. *Smith*, 131 Wn.2d at 264.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

HOUGHTON and HUNT, JJ., concur.

Reconsideration denied May 10, 1999.