[No. 68112-1.   En Banc.]
Argued February 1, 2001.     Decided July 12, 2001.

THE STATE OF WASHINGTON, *Petitioner*, v. JOHN KENNETH STEIN, *Respondent*.

*Arthur D. Curtis, Prosecuting Attorney*, and *Dennis M. Hunter, Deputy*, for petitioner.

*John Stein*, pro se.

*James E. Lobsenz* (of *Carney, Badley, Smith & Spellman*), for respondent.

*Jeffrey C. Sullivan, Prosecuting Attorney for Yakima*

*County*, and *Lauri M. Boyd, Deputy*, on behalf of Washington Association of Prosecuting Attorneys, amicus curiae.

BRIDGE, J. — We are presented with a question of the relationship between conspiracy and accomplice liability, and are required to determine whether Washington State law on complicity is consistent with federal law. We conclude that it is not.

John Kenneth Stein was charged with various criminal activities including and relating to murder, attempted murder, and conspiracy to commit same. Following trial, the jury found Stein not guilty of conspiracy to commit murder, but guilty of burglary and three counts of attempted murder, all based on vicarious liability. The Court of Appeals reversed the convictions on the grounds that the trial court's instructions erroneously allowed the jury to convict Stein on the basis of vicarious liability without finding that he was legally accountable as an accomplice. For its decision, the court relied on the *Pinkerton* doctrine,[1] which holds that a defendant cannot be held liable for the foreseeable acts of coconspirators without being found guilty of the underlying conspiracy.[2] While we agree with the Court of Appeals that the jury instructions here impermissibly allowed the jury to convict without finding all the elements of accomplice liability, we hold that the *Pinkerton* doctrine is not applicable under Washington law. We therefore affirm the Court of Appeals, but on different grounds, and remand the case to the trial court for further proceedings consistent with this opinion.

[1] *Pinkerton v. United States*, 328 U.S. 640, 66 S. Ct. 1180, 90 L. Ed. 1489 (1946).

[2] *State v. Stein*, 94 Wn. App. 616, 625, 972 P.2d 505 (1999).

## FACTS

Stein is a highly intelligent man who suffered serious head trauma in 1976, leaving him with severe paranoid delusions. His father Nicholas Stein owned assets worth over $3 million. In 1982, after Nicholas suffered a stroke, attorney Ned Hall was appointed as guardian of the estate. In that capacity, Hall filed a successful suit to set aside a real estate transaction in which Stein had acquired some of his father's property. Hall also helped draft a will leaving 10 percent of the estate to Nicholas Stein's long-time companion Thelma Lund and leaving only one third of the residue to Stein.

In 1983, Stein asked his stepson Michael Norberg to arrange "accidents" for people that Stein believed were depriving him of his inheritance. He offered $10,000 for each person eliminated. Nothing came of the plan until April 1987, when Lund, one of those targeted, was brutally beaten and then strangled to death in her own home.

In June 1987, Norberg and others made three unsuccessful attempts to kill or intimidate Hall, as a result of which Hall resigned as Nicholas Stein's guardian. When Norberg's friend Bailey claimed to have succeeded in murdering Hall, Stein gave Norberg $2,000 to pass on to Bailey. However, Norberg returned the money after discovering that Hall was not dead. Stein said that, although he had achieved the objective of removing Hall as guardian, he still wanted to see Hall dead.

Stein was arrested on July 28, 1988. He was charged with seven counts: conspiracy to commit first degree murder, felony murder of Lund, aggravated first degree murder of Lund, three counts of attempting to commit first degree murder of Hall, and one count of first degree burglary. The case ended in a mistrial.

On retrial, Stein filed a motion to remove his counsel on the grounds of conflict of interest and irreconcilable differences. On June 8, 1989, the trial court denied the motion, finding that Stein had consented to the representation, no

conflict of interest existed, and there were no irreconcilable differences. The case proceeded to trial. The jury acquitted Stein of conspiracy and the murder charges related to Lund, but convicted him of four counts related to Hall, all based on vicarious liability. Stein had not excepted to any of the vicarious liability instructions.

After Stein was sentenced to a total of 540 months, he filed a timely notice of appeal. His appellate counsel, Darrell Lee, was sanctioned three times for failure to perfect the appeal. On August 8, 1991, the appeal was dismissed. But on May 15, 1996, the Federal District Court, Bryan, J., ordered the appeal reinstated, holding that with minimally effective assistance of counsel on appeal, no reasonable fact finder would have concluded that the defendant was responsible for failure to perfect the appeal. The court also held that the excessive delay in appeal had denied the defendant his due process rights.

Stein later filed a motion for habeas corpus, which was converted to a personal restraint petition and consolidated with the appeal. The Court of Appeals, Division Two, reversed and remanded on the grounds that the court's instructions allowed the jury to convict Stein of vicarious liability for the substantive crimes committed by his alleged coconspirators without finding him guilty of the underlying conspiracy. The State filed a petition for review by this court, and Stein cross-petitioned. We granted review.

## ANALYSIS

The threshold question presented is a procedural one, i.e., whether the trial court's instructions to the jury contained a manifest error affecting a constitutional right, allowing the defendant to challenge the instructions on appeal without having taken exception to them at trial. *See State v. Stearns*, 119 Wn.2d 247, 250, 830 P.2d 355 (1992); RAP 2.5(a)(3).

■ ■ An error is manifest when it has practical and identifiable consequences in the trial of the case. *State v.*

*Green*, 80 Wn. App. 692, 694, 906 P.2d 990 (1995) (citing *State v. Lynn*, 67 Wn. App. 339, 345, 835 P.2d 251 (1992)). If the instructions allowed the jury to convict Stein without finding an essential element of the crime charged, the State has been relieved of its burden of proving all elements of the crime(s) charged beyond a reasonable doubt, and thus the error affected his constitutional right to a fair trial. A defendant cannot be said to have a fair trial "if the jury might assume that an essential element need not be proved." *State v. Smith*, 131 Wn.2d 258, 263, 930 P.2d 917 (1997) (citing *State v. Johnson*, 100 Wn.2d 607, 623, 674 P.2d 145 (1983)). Failure to instruct on an element of the offense is thus error of constitutional magnitude. *Id*. Here the instructions to the jury may be so construed. Therefore, the error was manifest and of constitutional magnitude. We thus turn to the substantive issue.

## The Relationship Between Conspiracy and Accomplice Liability

■ The jury was instructed under two alternative theories: conspiracy and accomplice liability. The Washington accomplice liability statute provides that:

(1) A person is guilty of a crime if it is committed by the conduct of another person for which he is legally accountable.

(2) A person is legally accountable for the conduct of another person when:

. . . .

(c) He is an accomplice of such other person in the commission of the crime.

(3) A person is an accomplice of another person in the commission of a crime if:

(a) With knowledge that it will promote or facilitate the commission of the crime, he

(i) solicits, commands, encourages, or requests such other person to commit it; or

(ii) aids or agrees to aid such other person in planning or committing it; or

(b) His conduct is expressly declared by law to establish his complicity.

RCW 9A.08.020. In contrast, the conspiracy statute provides that:

A person is guilty of criminal conspiracy when, with intent that conduct constituting a crime be performed, he or she agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them takes a substantial step in pursuance of such agreement.

RCW 9A.28.040(1). Accomplice liability requires knowledge and a completed crime; conspiracy requires intent and a substantial step towards completion.

The court gave the following vicarious liability instructions, to which the defense made no objection:

### Instruction 16

A person is legally accountable for the conduct of another person when the defendant is an accomplice of such other person in the commission of the crime.

A defendant who is an accomplice in the commission of a crime is guilty of that crime whether present at the scene or not.

A defendant is an accomplice in the commission of a crime, if, with knowledge that it will promote or facilitate the commission of the crime, he either:

(1) solicits, encourages, or requests another person to commit the crime[;] or

(2) aids or agrees to aid another person in planning or committing the crime.

The word "aid" means all assistance whether given by words, acts, encouragement, support or presence.

Clerk's Papers (CP) at 957-60.

### Instruction 17

A person is guilty of a crime if it is committed by the conduct of an accomplice for which he is legally accountable.

A person legally accountable for the conduct of an accomplice may be convicted on proof of the commission of the crime and of

his complicity therein, though the person claimed to have committed the crime has not been prosecuted or convicted or has been convicted of a different crime or degree of crime.

CP at 958.

### Instruction 18

A person is also legally accountable for the conduct of another person when the defendant is a co-conspirator of such other person, and the acts or conduct of the other person are a reasonably foreseeable consequence of the unlawful agreement.

CP at 959.

### Instruction 19

When a defendant, with intent that conduct constituting a crime be performed, agrees with one or more persons to engage in or cause the performance of such conduct, he becomes a member of a conspiracy, and continues to be a member of such conspiracy, and is responsible for all the acts of all members of the conspiracy regardless of whether or not he met or conversed with all the other members of the conspiracy, and regardless of whether or not he had knowledge of the commission of such acts by other members of the conspiracy, so long as the acts of the other members of the conspiracy were reasonably foreseeable as acts done in furtherance of the agreement.

CP at 960.

Instructions 16 and 17 are based on RCW 9A.08.020. Instructions 18 and 19 derive from *Pinkerton v. United States*, 328 U.S. 640, which held that a defendant is responsible for reasonably foreseeable acts committed by coconspirators. Because there was no special verdict form to enable the jury to clarify the basis for conviction, it is unclear which set of instructions the jury relied on in reaching its decision to convict Stein of the crimes relating to Hall.

In reversing the trial court, the Court of Appeals applied the *Pinkerton* doctrine, holding that the instructions impermissibly allowed the jury to convict Stein of the substantive crimes committed by his alleged coconspirators without

finding him guilty of the underlying conspiracy, which is not an option under *Pinkerton*. The court concluded that the error was tantamount to omitting an essential element of the charged crimes. *State v. Stein*, 94 Wn. App. 616, 625, 972 P.2d 505 (1999). The court reversed based on a defective *Pinkerton* instruction, not reaching the issue of whether the *Pinkerton* doctrine applies in this state, but assuming that it does. Nevertheless, the crucial issue is not only whether Stein could be convicted under federal law, but whether the instructions were adequate to convey the concept of vicarious liability under Washington law.

In *Pinkerton*, the United States Supreme Court interpreted section 37 of the criminal code, former 18 U.S.C. § 88, now codified at 18 U.S.C. § 371, which attributes the overt act of one partner in crime to all members of the conspiracy. *Pinkerton v. United States*, 328 U.S. at 647. In contrast, Washington's conspiracy statute, RCW 9A.28.040(1), provides only that "[a] person is guilty of criminal conspiracy when, with intent that conduct constituting a crime be performed, he or she agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them takes a substantial step in pursuance of such agreement."

Although the Washington statute makes all parties to the conspiracy guilty of the conspiracy itself, it is silent on the subject of crimes committed by coconspirators. No Washington case holds a defendant liable for the substantive acts of coconspirators without also satisfying the elements of accomplice liability and no Washington case cites *Pinkerton* as the basis for conspiratorial liability. *See State v. Stein*, 94 Wn. App. at 624.

The State claims that conspiratorial liability has a long-standing common law basis in Washington and is therefore "conduct . . . declared by law to establish his complicity." RCW 9A.08.020(3)(b). However, the Court of Appeals correctly pointed out that the cases cited to support this proposition were all decided in a manner consistent with the accomplice liability statute. *See, e.g., State v. Cooper*, 26

Wn.2d 405, 413, 174 P.2d 545 (1946) (finding sufficient evidence to support premeditated murder when the accomplice offered the shooter $500 to kill the victim); *State v. Berry*, 200 Wash. 495, 93 P.2d 782 (1939) (holding that when defendants conspired to emasculate a witness, and the conspirators participated in the crime, each was held responsible for the injuries); *State v. Dudrey*, 30 Wn. App. 447, 454, 635 P.2d 750 (1981) (holding that one who participates in some phase of the crime with the intention of bringing it about is an accomplice). By contrast, here the instructions allowed the jury to find Stein guilty of conspiracy based not on accomplice liability but on the *Pinkerton* doctrine.

Instructions 18 and 19 allowed the jurors to convict Stein if the evidence showed that he conspired to intimidate Hall and the murder attempts were in furtherance of the conspiracy. Thus, the jury could have found Stein guilty of the murder attempts perpetrated by his coconspirators even in the absence of proof that he knew of those attempts. However, under Washington law,[3] a person is an accomplice only if he or she solicits, commands, encourages, or requests the commission of a crime "[w]ith knowledge that it will promote or facilitate the commission of *the* crime[.]" RCW 9A.08.020(3)(a) (emphasis added).

This Court held recently that the use of the phrase "a crime" in jury instructions instead of "the crime," as used in the statute, impermissibly establishes strict liability for any crime committed by the principal, contrary to legislative intent. *State v. Roberts*, 142 Wn.2d 471, 510-11, 14 P.3d 713 (2000). *See also State v. Cronin*, 142 Wn.2d 568, 579, 14

---

[3]

   (3) A person is an accomplice of another person in the commission of a crime if:

   (a) With knowledge that it will promote or facilitate the commission of the crime, he

   (i) solicits, commands, encourages, or requests such other person to commit it; or

   (ii) aids or agrees to aid such other person in planning or committing it[.]

RCW 9A.08.020.

P.3d 752 (2000) (adhering to the *Roberts* decision). In those cases, we held the jury instructions to be legally defective because each allowed the jury to convict the defendant if he had general knowledge of *any* crime rather than requiring knowledge of *the crime charged*. Clearly then, under this Court's holdings in *Roberts* and *Cronin*, the accomplice liability statute, RCW 9A.08.020, requires knowledge of "the" specific crime, and not merely any foreseeable crime committed as a result of the complicity.

In contrast, the instructions here, taken as a whole, enabled the jury to convict Stein of conspiratorial liability for attempted murder without finding the necessary element of knowledge that his coconspirators intended to murder the victim. Further, since liability under the *Pinkerton* doctrine requires no such knowledge, it is directly contrary to the holding of *Roberts* and *Cronin* and is therefore incompatible with Washington law. The trial court thus erred in instructing the jury that they could find the defendant guilty of a substantive crime committed by his coconspirators merely because that crime was foreseeable.

### Harmless Error Analysis

■ Instructional error is presumed to be prejudicial unless it affirmatively appears to be harmless. *State v. Wanrow*, 88 Wn.2d 221, 237, 559 P.2d 548 (1977). The State argues that the error in the conspiracy instructions is harmless because it arises as one of two theories of liability and the alternative theory is supported by substantial evidence. *State v. McDonald*, 138 Wn.2d 680, 981 P.2d 443 (1999). The State's reliance on *McDonald* is inapposite.

In *McDonald*, multiple shots were fired at the victim. The trial court gave an instruction that enabled the jury to find " 'either that McDonald's gunshot was one of multiple proximate causes of Michael's death or that McDonald acted as an accomplice to Bassett, whose gunshots were a proximate cause of Michael's death.' " *Id.* at 686 (quoting

*State v. McDonald*, 90 Wn. App. 604, 610, 953 P.2d 470 (1998)). Thus, the question for the jury to decide in *McDonald* was whether the defendant acted as a principal *or* as an accomplice. Each alternative was a legally viable alternative basis for conviction because "we have made clear the emptiness of any distinction between principal and accomplice liability." *Id.* at 688.

Unlike the situation in *McDonald*, Stein's conviction relies on two alternative theories, one of which had an inadequate legal basis. When a defendant is convicted under alternative theories, one acceptable and the other based on an erroneous instruction, this court has not been willing to substitute its judgment for that of the jury by inferring that the verdict was reached under the correct instruction. *State v. MacMaster*, 113 Wn.2d 226, 234, 778 P.2d 1037 (1989) (reversing and remanding when the jury convicted the defendant of vehicular homicide under alternative theories, one of which did not require alcohol intoxication to be the proximate cause). *See also State v. Green*, 94 Wn.2d 216, 616 P.2d 628 (1980) (reversing and remanding where the defendant was convicted of aggravated first degree murder under alternative theories of rape or kidnapping and there was insufficient evidence to support the kidnapping charge).

No special verdict form was used. Therefore, we cannot conclude that the jury reached its verdict based on the accomplice liability instructions. We presume that juries follow all instructions given. *Degroot v. Berkley Constr., Inc.*, 83 Wn. App. 125, 131, 920 P.2d 619 (1996) (citing *State v. Lord*, 117 Wn.2d 829, 861, 822 P.2d 177 (1991), *cert. denied*, 506 U.S. 856 (1992)). Thus, the jury here could have found Stein guilty of attempted murder under the *Pinkerton* conspiracy instructions based on the finding that he and Norberg agreed to assault Hall, even if he had no idea that his coconspirators would attempt to commit murder. As discussed above, the conspiracy instructions provided a much broader basis of liability than does the Washington law of accomplice liability, RCW 9A.08.020.

The fact that the State did not discuss accomplice liability in closing arguments, but focused on *Pinkerton* liability, renders the probability even greater that the jury used conspiracy to intimidate as the basis for finding Stein guilty of attempted murder and burglary. The error is not harmless.

## CONCLUSION

In Washington, the conspiracy statute (RCW 9A-.28.040(1)) predicates liability on the accomplice liability statute (RCW 9A.08.020). Knowledge of the particular crime committed is an essential element of accomplice liability. Absent that knowledge, Washington law does not allow conviction for crimes committed by coconspirators, whether or not they are foreseeable. Thus, the *Pinkerton* doctrine is inapplicable to Washington law. We remand for a new trial, leaving to the sound discretion of the trial court the question of whether further relief is appropriate under CrR 8.3, or other theories raised in Stein's cross-petition.

ALEXANDER, C.J., and SMITH, JOHNSON, MADSEN, IRELAND, CHAMBERS, and OWENS, JJ., concur.

SANDERS, J. (dissenting) — Article I, section 10, of the Washington Constitution mandates "Justice in all cases shall be administered openly, and without unnecessary delay." The plain language of the section thus reveals the commitment of the framers to decide cases in a manner that is *both* just and swift. Accordingly, unnecessary delay in and of itself is an error of constitutional magnitude. Simply reinstating a criminal defendant's appeal after an extended period of unnecessary delay does nothing to cure the error. Where there is a wrong the court should provide a remedy.[4]

The constitutional deprivation visited upon Mr. Stein is

---

[4] *Cf. Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163, 2 L. Ed. 60 (1803) (" '[I]t is a general and indisputable rule, that where there is a legal right, there is also a legal remedy by suit or action at law, whenever that right is invaded.' . . . The government of the United States has been emphatically termed a government of laws, and not of men. It will certainly cease to deserve this high appellation, if the

the six-and-one-half-year delay in his criminal appeal. The delay violates Stein's right to a speedy trial. No remedy aside from dismissal of charges pursuant to CrR 8.3(b) makes sense:

> **On Motion of Court.** The court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial. The court shall set forth its reasons in a written order.

"Fairness to the defendant underlies the purpose of CrR 8.3(b)." *State v. Koerber*, 85 Wn. App. 1, 5, 931 P.2d 904 (1996). *See also State v. Boldt*, 40 Wn. App. 798, 801, 700 P.2d 1186 (1985) ("The purpose of the rule is to ensure that, once an individual is charged with a crime, he or she is fairly treated."). Moreover, "[t]he rule is intended to protect against governmental misconduct or arbitrary action." *State v. Wilke*, 28 Wn. App. 590, 596, 624 P.2d 1176 (1981). Dismissal of charges pursuant to CrR 8.3(b) is appropriate when the defendant shows (1) government misconduct and (2) prejudice. *State v. Michielli*, 132 Wn.2d 229, 239-40, 937 P.2d 587 (1997).

The government misconduct here is readily apparent. Mr. Stein was convicted of one count of burglary and three counts of attempted murder. The judgment and sentence was entered on September 1, 1989, and five days later Stein filed a timely Notice of Appeal. However Division Two of the Court of Appeals dismissed Stein's appeal on August 8, 1991. Stein continued to be imprisoned without the benefit of appeal until Federal District Judge Robert Bryan vacated the dismissal order on May 15, 1996. Judge Bryan determined, inter alia, misconduct by officers of the court caused excessive delay resulting in dismissal of Stein's appeal.[5] Stein's appeal was not reinstated until June 10, 1996, *five years* after dismissal.

---

laws furnish no remedy for the violation of a vested legal right." (quoting 3 WILLIAM BLACKSTONE, COMMENTARIES *23)).

[5] Judge Bryan found the official court reporter, the Clark County clerk's office,

Even had Judge Bryan determined the government's misconduct was mere oversight, the first prong of the test would still be satisfied: "Governmental misconduct . . . 'need not be of an evil or dishonest nature; *simple misman- agement is sufficient.*' " *Michielli*, 132 Wn.2d at 239 (quoting *State v. Blackwell*, 120 Wn.2d 822, 831, 845 P.2d 1017 (1993)).

The prejudice is apparent. *Michielli*, 132 Wn.2d at 240. "Such prejudice includes the right to a speedy trial . . . ."[6] *Id.* The text of the Washington Constitution "expressly provides delay in and of itself is a constitutional evil against which we must guard: criminal justice must be prompt and not unnecessarily protracted." *State v. Head*, 136 Wn.2d 619, 627, 964 P.2d 1187 (1998) (Sanders, J., dissenting). And the Washington Constitution article I, section 10, is mandatory by its terms: "Justice in all cases *shall* be administered openly, *and without unnecessary delay.*" (Emphasis added.)

How much time must pass before a delay in the admin- istration of justice is deemed prejudicial? The majority apparently believes six-and-one-half years is not long enough. Is seven? Or eight? Or ten?

Our constitution simply mandates justice be adminis- tered "without unnecessary delay." Unless this clause is mere surplusage we are not at liberty to ignore it. To the contrary, it is written in the imperative. When delay is unnecessary it violates the constitution.

Whatever retribution the State has exacted from Mr. Stein during the last six-and-one-half years is ill gotten and serves only to undermine the faith of the citizenry in its government. We must be ever mindful that " 'though unfair

---

and the prosecutor were all partially to blame for the dismissal because their actions impeded the process of compiling the official record for appeal.

[6] Prejudice is limited to an impairment of the defense. It includes any threat to " 'an accused's significant stakes—psychological, physical and financial—in the prompt termination of a proceeding which may ultimately deprive him of life, liberty or property.' " *United States v. Dreyer*, 533 F.2d 112, 115 (3d Cir. 1976) (quoting *United States v. Roberts*, 515 F.2d 642, 645 (2d Cir. 1975)).

means may happen to result in doing justice to the prisoner in the particular case, yet, justice so attained is unjust and dangerous to the whole community.'" *State v. Stentz*, 30 Wash. 134, 140, 70 P. 241 (1902) (quoting *Hurd v. People*, 25 Mich. 405, 406 (1872)).

But here it is not even certain the use of unfair means has resulted in doing justice to this particular defendant. It is impossible to determine from the verdict whether the jury meant to convict Mr. Stein of burglary, attempted murder, or both. Majority at 247. Burglary 1 carries a seriousness level of VII for purposes of the Sentencing Reform Act of 1981 (SRA). RCW 9.94A.320. The standard sentencing range for a defendant with no prior convictions who is convicted of a level VII offense is only 18 months. RCW 9.94A.310. If on remand the jury determines Mr. Stein is guilty as an accomplice to burglary but not to attempted murder, a further injustice will have been worked upon him. Specifically, the duration of the unconstitutional delay in his appeal will have been more than three times longer than the *maximum* possible term of confinement permitted under the SRA.

Here the delay is clearly "unnecessary" as no satisfactory justification has been advanced. Judge Bryan's oral ruling places at least part of the blame on officers of the court. Reinstatement of Stein's appeal is not simply an inadequate remedy, it is no remedy at all. It does nothing to cure the delay or compensate for it.

This delay will persist for at least another year ere Mr. Stein's case is finally resolved, and thus an already intolerable situation will only be exacerbated by yet further passage of time. Historically Washington Courts have dismissed cases where delay in a defendant's appeal was much shorter than that suffered by Mr. Stein. For example Division One of the Court of Appeals imposed the "Draconian" penalty of dismissal with prejudice where government misconduct had unnecessarily delayed the defendant's appeal for three years—a delay half as long as Stein has suffered. *State v. Smith*, 68 Wn. App. 201, 208-09, 842 P.2d 494 (1992).

I disagree with the majority's decision to leave this remedy to the discretion of the trial court on remand. The constitution is mandatory, not discretionary: "The provisions of this Constitution are mandatory, unless by express words they are declared to be otherwise." CONST. art. I, § 29.

I therefore dissent.