[No. 23569-6-III.   Division Three.   June 27, 2006.]

THE STATE OF WASHINGTON, *Respondent*, v. ANDRE PAUL BECKLIN, *Appellant*.

*Anthony R. Catelda, Attorney at Law*, for appellant.

*James A. Von Sauer, Prosecuting Attorney*, and *Robert M. McKenna, Attorney General*, and *Alex A. Kostin* and *Ronda D. Larson, Assistants*, for respondent.

¶1 SCHULTHEIS, J. — The crime of stalking as defined by the legislature in RCW 9A.46.110(1) cannot be accomplished through a third party. The State argued an accomplice liability theory in closing argument but did not offer an accomplice instruction before deliberations. In response to an inquiry during jury deliberations, the trial court instructed the panel that stalking could be accomplished through a third party. Because the instruction was both too late and an incorrect statement of the law, we reverse the defendant's stalking conviction.

## FACTS

¶2 Mary McGee Ash and Andre Paul Becklin had a child together in October 1997. After their relationship deterio-

rated, Ms. Ash married Aaron Ash. On December 29, 2003, Ms. Ash obtained an order for protection from the Ferry County Superior Court prohibiting Mr. Becklin from having any contact with her, directly or through others, or coming within 100 feet of her home.

¶3 On March 13, 2004, Ms. Ash reported to the sheriff that two people who she recognized drove Mr. Becklin's car slowly past her home a few times that day. On March 26, she filed another statement with the sheriff to report that after a court appearance on the parentage action involving her child with Mr. Becklin, he and another man who attended the hearing followed her home in separate cars and then circled the block. The men continued to follow her on an errand. She saw them driving around her neighborhood until dark.

¶4 On April 6, Mr. Becklin was charged with stalking. The information was amended the same day to include citation to the stalking statute, RCW 9A.46.110. On October 20, the State moved to amend the information, noting the hearing for November 2, the first day of trial. The State did not serve a copy of the proposed second amended information. The court granted the State's motion on the first day of trial over the defendant's objection. During trial, before the State rested, it again moved to amend the information. The court granted the motion over the defendant's objection.

¶5 During deliberations, the jury made two written inquiries to the court. In its first inquiry, the jury asked, "Is [a] third party included in stalking? Pursuant to our instructions of charges brought against the defendant can you stalk a party [through] a third person?" Clerk's Papers (CP) at 123. The court responded, "Yes" over the objection of defense counsel. CP at 123. The second question was, "Is there a stalking distance between the stalker and the victim?" CP at 124. The court responded, "No, refer to Instruction No. 6 for the elements of the crime that need to be proven." CP at 124. The defense objected. The jury found

Mr. Becklin guilty of felony stalking. *See* RCW 9A.46-.110(5)(b). Mr. Becklin appeals.

## DISCUSSION

### a. Amendment of the Information

██ ¶6 We review the trial court's grant of a motion to amend an information for abuse of discretion. *State v. Brett*, 126 Wn.2d 136, 155, 892 P.2d 29 (1995). A trial court may allow the amendment of the information at any time before the verdict as long as the "substantial rights of the defendant are not prejudiced." CrR 2.1(d). Mr. Becklin has the burden of demonstrating prejudice under CrR 2.1(d). *State v. Hakimi*, 124 Wn. App. 15, 26-27, 98 P.3d 809 (2004) (citing *State v. Gosser*, 33 Wn. App. 428, 435, 656 P.2d 514 (1982)), *review denied*, 154 Wn.2d 1004 (2005). Mr. Becklin argues he was prejudiced by the amendments to the information because the date of the charged conduct was altered and he was not informed of the change in time to adequately prepare for trial.

¶7 The information was initially amended to include the statute. It read *"on or about March 26, 2004, . . .* [Mr. Becklin] repeatedly harassed or repeatedly followed another person." CP at 3 (emphasis added). On the first day of trial, the second amended information read, *"on or about the 13th day of March, 2004 and several times on or about the 26th day of March, 2004, . . .* [Mr. Becklin] did . . . repeatedly harass or repeatedly follow another person." CP at 59 (emphasis added). Finally, the third amended information, ordered before the State rested, read, *"on or about the 13th day of March, 2004, up to and including on or about the 26th day of March, 2004, . . .* [Mr. Becklin] did . . . repeatedly harass or repeatedly follow another person." CP at 121 (emphasis added).

██ ¶8 This court has held that where only the date has changed, no alibi has been claimed, and the " 'principal element in the new charge is inherent in the previous

charge and no other prejudice is demonstrated,'" it is not an abuse of discretion to allow the amendment. *State v. Allyn*, 40 Wn. App. 27, 35, 696 P.2d 45 (1985) (quoting *Gosser*, 33 Wn. App. at 435). Here, the date of the offense was changed, no alibi defense was claimed, and the amendments had no affect on the elements.

¶9 Further, although Mr. Becklin complains on appeal that the matter was not continued, he did not request a continuance from the trial court. The failure to request a continuance shows he was not prejudiced by the amendment. *See State v. Murbach*, 68 Wn. App. 509, 511, 843 P.2d 551 (1993); *State v. Brown*, 55 Wn. App. 738, 743, 780 P.2d 880 (1989).

¶10 Moreover, Mr. Becklin had pretrial notice of the allegations that the conduct took place on both of the dates at issue based on pretrial discovery, which defense counsel acknowledged he received.

¶11. Finally, Mr. Becklin argues that the third amended information was improper as it was done sua sponte by the court. He relies on *State v. Kenney*, 23 Wn. App. 220, 595 P.2d 52 (1979). The record clearly demonstrates that it was the prosecutor's decision to amend the charge. Therefore, unlike the defendant in *Kenney*, the court did not sua sponte direct the amendment.

### b. Jury Instructions

¶12 When a jury is in deliberations, the trial court has discretion to determine whether to give further instructions upon request. *State v. Brown*, 132 Wn.2d 529, 612, 940 P.2d 546 (1997); *see* CrR 6.15(f)(1). We review claimed errors of law in jury instructions under a de novo standard of review. *State v. Barnes*, 153 Wn.2d 378, 382, 103 P.3d 1219 (2005).

¶13 Here, the jury first asked the court if a "third party [is] included in stalking?" and "can you stalk a party [through] a third person?" CP at 123. The court responded affirmatively.

¶14 Under the stalking statute, "A person commits the crime of stalking if . . . [h]e or she intentionally and repeatedly harasses or repeatedly follows another person."[1] RCW 9A.46.110(1)(a). The statute provides definitions for "follows" and "harasses." RCW 9A.46.110(6)(a), (b). Neither provides for third party performance. The definition for follows provides:

> "Follows" means deliberately maintaining visual or physical proximity to a specific person over a period of time. A finding that the alleged stalker repeatedly and deliberately appears at the person's home, school, place of employment, business, or any other location to maintain visual or physical proximity to the person is sufficient to find that the alleged stalker follows the person. It is not necessary to establish that the alleged stalker follows the person while in transit from one location to another.

RCW 9A.46.110(6)(a).

¶15 The definition for harasses refers to "unlawful harassment as defined in RCW 10.14.020." RCW 9A.46.110(6)(b).

> "Unlawful harassment" means a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, harasses, or is detrimental to such person, and which serves no legitimate or lawful purpose. The course of conduct shall be such as would cause a reasonable person to suffer substantial emotional distress, and shall actually cause substantial emotional distress to the petitioner, or, when the course of conduct would cause a reasonable parent to fear for the well-being of their child.

RCW 10.14.020(1).

¶16 That definition does not provide for harassment by means of a third party. The statute goes on to define course of conduct.

---

[1] The victim must also reasonably fear personal injury or injury to another or to their property. RCW 9A.46.110(1)(b). The perpetrator must either intend to frighten, intimidate, or harass the victim, or know or reasonably should know that the victim feels afraid, intimidated, or harassed. RCW 9A.46.110(1)(c)(i), (ii).

"Course of conduct" means a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose. "Course of conduct" includes, in addition to any other form of communication, contact, or conduct, the sending of an electronic communication. Constitutionally protected activity is not included within the meaning of "course of conduct."

RCW 10.14.020(2).

¶17 The State asserts that the instruction is a correct statement of the law. *See State v. Watkins*, 31 Wn. App. 485, 487, 643 P.2d 465 (1982) (affirming conviction when supplemental instruction was a correct statement of the law), *aff'd*, 99 Wn.2d 166, 660 P.2d 1117 (1983). The State relies on *State v. Parmelee*, 108 Wn. App. 702, 32 P.3d 1029 (2001). In *Parmelee*, Division One of this court held that two of the defendant's three protective order violation convictions merged with the felony stalking conviction. *Parmelee*, 108 Wn. App. at 711. There, the defendant told unwitting prison inmates that his former wife wished to receive sexually explicit mail from prisoners. *Id.* at 706-07. This is the course of conduct that resulted in the conviction, not the letter-writing by the third parties or the fact of the letters themselves, which are merely evidence of the defendant's course of conduct. *Parmelee* does not support the State's position.

¶18 A person can be held responsible for the conduct of another if "[a]cting with the kind of culpability that is sufficient for the commission of the crime, he causes an innocent or irresponsible person to engage in such conduct." RCW 9A.08.020(2)(a). One can also be held responsible for the conduct of another if the statute defining the crime specifically provides for it. RCW 9A.08.020(2)(b); *e.g, State v. J.M.*, 101 Wn. App. 716, 730, 6 P.3d 607 (2000) (holding that harassment under RCW 9A.46.020 requires proof of a direct or indirect threat, which could be accomplished through a third person; therefore, the State was not required to prove that the defendant knew that his threat to kill the high school principal that he communicated to his school friends would be further communicated to the prin-

cipal, or that he knowingly engaged in words or conduct through the communication of others that placed the principal in reasonable fear the threat would be carried out), *aff'd*, 144 Wn.2d 472, 28 P.3d 720 (2001). Finally, a person can be responsible for the acts of another if "[h]e is an accomplice of such other person in the commission of the crime."[2] RCW 9A.08.020(2)(c).

¶19 Here, the protective order involving Mr. Becklin covered third party contact.[3] However, the statute does not include a violation of a protective order as a definition of harassment. A protective order violation merely elevates the crime to a felony. RCW 9A.46.110(5)(b); *Parmelee*, 108 Wn. App. at 709-10. Mr. Becklin properly argued to the jury in his closing argument that he was not charged with violating the protective order.

¶20 Mr. Becklin contends that the State was required to charge him as an accomplice. He is mistaken. An information that charges an accused as a principal provides adequate notice of potential accomplice liability. *State v. Davenport*, 100 Wn.2d 757, 764-65, 675 P.2d 1213 (1984). However, the court was required to give an accomplice instruction that provides the elements of accomplice liability. *State v. Stein*, 94 Wn. App. 616, 628, 972 P.2d 505 (1999), *aff'd*, 144 Wn.2d 236, 27 P.3d 184 (2001); *see Davenport*, 100 Wn.2d at 764-65. Here, it did not.

¶21 The State argued in closing, "Assistance. Aiding and abetting. That's what it is, that's what this case is about, is enlisting others to do your own dirty work, and that's what

---

[2] RCW 9A.08.020(3) provides:

A person is an accomplice of another person in the commission of a crime if:

   (a) With knowledge that it will promote or facilitate the commission of the crime, he

   (i) solicits, commands, encourages, or requests such other person to commit it; or

   (ii) aids or agrees to aid such other person in planning or committing it; or

   (b) His conduct is expressly declared by law to establish his complicity.

[3] The order states, "Respondent is RESTRAINED from coming near and from having any contact whatsoever, in person or through others, by phone, mail, or any means, directly or indirectly." Ex. 15.

Mr. Becklin did." 3 Report of Proceedings (RP) at 331. Then, when the trial judge first asked the State for its comments with respect to the jury's inquiry, if one can stalk a party through a third person, the prosecutor stated:

> My view, of course, is that you can. It's aiding and abetting. It's a principal liability situation, and perhaps they should have had an instruction on that, that wasn't prepared by my office.

3 RP at 340.

¶22 Similar to this case, in *Davenport*, a second degree burglary case, the prosecutor argued in closing that it was immaterial whether the defendant or the driver of the car actually went into the house, because " 'they are accomplices.' " *Davenport*, 100 Wn.2d at 759. But the State had not charged the defendant as an accomplice and had not requested an accomplice liability instruction. *Id.* at 758. During deliberations, the jury sent a note to the trial judge requesting a definition of " 'accomplice' in terms of participation in the crime of burglary, *i.e.*, does the defendant have to physically enter and remove the identified items or can he be simply an outside participant?" *Id.* at 759 (internal quotation marks omitted). The trial judge instructed the jury to " 'rely on the law given in the Court's instructions.' " *Id.* The jury returned a guilty verdict. Our Supreme Court held that the prosecutor's closing statement was improper because it introduced a legal theory of criminal liability that was neither charged nor contained in the jury instructions. *Id.* at 760. Further, the trial court failed to clarify that the jury could not consider accomplice liability. *Id.* at 764. Here, the judge erroneously instructed the jury that it could rely on a legal theory the prosecutor improperly introduced in closing remarks.

¶23 Counsel may argue all issues and theories covered by the instructions, whether raised by him or opposing counsel, but may not argue theories not covered by the instructions. *State v. Ransom*, 56 Wn. App. 712, 714, 785 P.2d 469 (1990). While the trial court has discretion to

further instruct the jury after deliberations have begun, the supplemental instructions may not go beyond matters that either had been, or could have been, properly argued to the jury. *Id.* The State argued a partial accomplice theory without ensuring that the jury was properly instructed. Then the trial court attempted to instruct the jury regarding the belated accomplice theory. But it was too late for an accomplice instruction and the instruction the trial court gave was an incorrect statement of the law without an accomplice liability instruction.

¶24 In light of our ruling, we do not reach the jury's second inquiry.

## CONCLUSION

¶25 The court abused its discretion by instructing the jury when it did and it erred as a matter of law in the incomplete manner it instructed the jury on accomplice liability. We therefore reverse.

THOMPSON, J. PRO TEM., concurs.

¶26 SWEENEY, C.J. (dissenting) — I respectfully dissent from part "b. Jury Instructions" of the majority opinion for the following reasons:

¶27 (1) The trial judge here had broad discretion to give additional jury instructions even after deliberations had begun. *State v. Ng*, 110 Wn.2d 32, 42-43, 750 P.2d 632 (1988); *State v. Ransom*, 56 Wn. App. 712, 714, 785 P.2d 469 (1990). And a trial court may instruct the jury on accomplice liability even if the State failed to charge that theory in the information. *State v. Davenport*, 100 Wn.2d 757, 764-65, 675 P.2d 1213 (1984). This is because a defendant who is charged as a principal is on notice of accomplice liability. *State v. Teal*, 117 Wn. App. 831, 838, 73 P.3d 402 (2003), *aff'd*, 152 Wn.2d 333, 96 P.3d 974 (2004).

¶28 (2) There was ample evidence of accomplice liability.

¶29 (3) And more significantly both the State and Andre Becklin argued accomplice liability to the jury. 3 Report of Proceedings at 294-96, 299, 314-15, 320, 322-23, 331.

¶30 (4) The court's response to the jury's inquiry was both limited and a correct statement of the law of accomplice liability, RCW 9A.08.020. Mr. Becklin's argument here on appeal is primarily that the court's further instruction amounted to a comment on the evidence. It did not. It was a simple and correct "yes" response to a legal question posed by the jury. *State v. Woods*, 143 Wn.2d 561, 591, 23 P.3d 1046 (2001).

¶31 I would affirm Mr. Becklin's conviction.

Reconsideration denied September 18, 2006.

Review denied at 160 Wn.2d 1006 (2007).