182 P.3d 944 (2008)
STATE of Washington, Petitioner,
v.
Andre Paul BECKLIN, Respondent.
No. 79354-9.
Supreme Court of Washington, En Banc.
Argued November 27, 2007.
Decided May 1, 2008.
Michael George Sandona, Attorney at Law, Republic, WA, Steven J. Tucker, Attorney at Law, Mark Erik Lindsey, Spokane County Prosecuting Attorneys, Spokane, WA, for Petitioner.
Anthony Rocco Castelda, Attorney at Law, Tonasket, WA, for Respondent.
BRIDGE, J.P.T.[*]
¶ 1 Andre Paul Becklin was accused of stalking his ex-girlfriend, Mary Alison McGee. At trial, the State presented evidence that Becklin had directed several of his friends to follow McGee and report back to him regarding her activities. Both parties argued in closing arguments about whether Becklin had used his friends to stalk McGee, but the State did not propose an instruction on accomplice liability. During deliberations, the jury asked if stalking could be accomplished through a third party and, after hearing from counsel, the trial court answered "yes." The jury then convicted Becklin of stalking. The Court of Appeals concluded *945 that the trial court's answer to the jury's question was improper because it was too late to amount to a proper instruction and it was an incorrect statement of the law. The State petitioned this court for review.
¶ 2 We conclude that the trial court's answer to the jury's question accurately communicated that stalking encompasses the act of directing others to harass a victim. Moreover, the trial court did not abuse its discretion when it decided to give the jury further instruction on the law in response to its question, given that both parties had argued the issue to the jury. We therefore reverse the Court of Appeals.

I

Facts and Procedural History
¶ 3 Becklin and McGee had a tumultuous relationship that began in 1992. Almost immediately after the relationship became romantic in 1996, Becklin threatened to kill McGee if she ever became involved with someone else. When McGee became pregnant in 1997, Becklin insisted that she have an abortion. When she refused, he punched her in the stomach and then attempted to rape her. She escaped and moved in with friends, but soon returned and gave birth to their son, Ace, in October 1997.
¶ 4 For the next few years, McGee alternatively lived with Becklin, stayed with friends, or lived in her own apartment. When she moved into an apartment for the final time, Becklin began to show up there every day trying to gain entrance. Even after McGee became involved with Aaron Ash, whom she eventually married, Becklin and McGee fought on numerous occasions because Becklin wanted McGee to return to a relationship with him.
¶ 5 Any civility in the relationship between Becklin and McGee evaporated when McGee announced her intention to marry Ash. In November 2003, McGee and Becklin fought about this issue, and Becklin took Ace without McGee's consent. When friends returned Ace to McGee, Becklin tried to force his way into McGee's house. As a result, McGee obtained a protection order in December 2003, preventing Becklin from having any contact with her and preventing him from coming within 100 feet of her or her home. The order also explicitly prohibited contact through third parties.
¶ 6 The events that led to the charges at issue in this case occurred from March 13 to March 26, 2004. McGee testified that Becklin's friends repeatedly drove Becklin's cars by her house, circling her block several times. Two witnesses testified that they filled out written reports for Becklin recounting their sightings of McGee around town. McGee also testified that on March 26, 2004, Glen Jarmin, a close friend of Becklin's, followed McGee from a court hearing to her home, circled her block several times, and then followed her on an errand. McGee was afraid of Jarmin because he had helped Becklin try to break into her home in the past. Finally, McGee testified that Becklin himself also followed her home from the court appearance and was seen driving near her home.
¶ 7 McGee reported these activities to the police, and Becklin was arrested on April 1, 2004. For incidents that occurred in late February 2004, Becklin was charged with and found guilty of violating the protection order. Becklin was also charged with stalking McGee between March 13 and March 26, 2004. The stalking information included allegations of "violation of the protection order," but only for purposes of elevating the stalking from a gross misdemeanor to a class C felony. Clerk's Papers (CP) at 121; RCW 9A.46.110(5)(b)(ii).[1]
¶ 8 At trial, the jury heard testimony about the foregoing activities from two of Becklin's friends, from a police officer, and from McGee. The court instructed the jury that to convict Becklin of stalking, it had to find beyond a reasonable doubt that he had "intentionally and repeatedly harassed or repeatedly followed Mary Alison McGee" without lawful authority and that she reasonably feared that he would injure her, another person, or property. CP at 99. The "to convict" instruction also indicated that the jury had to find either intentional harassment *946 or that Becklin knew or reasonably should have known that McGee would feel frightened, intimidated, or harassed. CP at 99-100.
¶ 9 The jury was instructed on the relevant definitions:
To harass means to carry out a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, or harasses or is detrimental to such person, and which serves no legitimate or lawful purpose. The course of conduct must be one that would cause a reasonable person to suffer substantial emotional distress and which actually causes the person to suffer substantial emotional distress.

Course of conduct means a pattern of conduct composed of a series of acts over a period of time, however short, demonstrating the same purpose.

Willful or willfully means to act purposefully, not inadvertently or accidentally.
CP at 101 (emphasis added). The jury instructions did not include the pattern jury instruction on accomplice liability, nor did they directly set forth the concept that a third party's actions could support criminal accountability for stalking.
¶ 10 During closing arguments, both sides addressed the issue of whether Becklin should be held accountable for the actions of his friends. The prosecutor pointed to the instances in which Becklin's friends allegedly followed McGee and asked the jury to infer from the evidence that Becklin had directed his friends to do so. Defense counsel, on the other hand, argued that the evidence showed that Becklin himself never stalked McGee and there was no direct evidence that Becklin was in fact directing his friends to follow her. In rebuttal the prosecutor asserted, "Assistance. Aiding and abetting. That's what it is, that's what this case is about, is enlisting others to do your own dirty work, and that's what Mr. Becklin did." Report of Proceedings at 331.
¶ 11 After retiring to deliberate, the jury asked:
Is [a] third party included in stalking? Pursuant to our instructions of charges brought against the defendant? Can you stalk a party thru a third person?
CP at 123. After considering arguments from both sides, the trial judge answered "Yes." CP at 123. The jury then found Becklin guilty of the crime of stalking. The jury also returned a special verdict indicating that "[t]he Stalking was in violation of an existing Protection Order." CP at 126. Becklin was sentenced to 12 months of confinement.
¶ 12 Becklin appealed, arguing, among other things, that the trial court improperly answered the jury's inquiry regarding third-party participation in the stalking. The Court of Appeals concluded that the crime of stalking cannot be accomplished through a third person. State v. Becklin, 133 Wash. App. 610, 612, 137 P.3d 882 (2006). The majority opined that the court's answer to the jury's question was both too late and an incorrect statement of the law, and thus it reversed the defendant's stalking conviction. Chief Judge Dennis J. Sweeney dissented, arguing that the trial judge had broad discretion to give additional jury instructions after deliberations had begun and the trial judge's response to the jury's question "was a simple and correct `yes' response to a legal question posed by the jury." Id. at 621, 137 P.3d 882 (Sweeney, C.J., dissenting). The State petitioned this court for review, which we granted at 161 Wash.2d 1001, 166 P.3d 718 (2007).

II

Analysis
¶ 13 We review both statutory interpretation and alleged error in the jury instructions de novo. State v. Hacheney, 160 Wash.2d 503, 512, 158 P.3d 1152 (2007), cert. denied, ___ U.S. ___, 128 S.Ct. 1079, 169 L.Ed.2d 820 (2008); State v. Barnes, 153 Wash.2d 378, 382, 103 P.3d 1219 (2005). We must determine whether the trial judge's brief answer to the jury's question was a timely, accurate, and sufficient instruction to the jury on the law.
¶ 14 Washington's complicity statute acknowledges that by their plain language, some criminal statutes contemplate the involvement of third parties. RCW *947 9A.08.020(2)(b) (providing that a defendant can be "made accountable for the conduct of such other person . . . by the law defining the crime"). If the definition of the crime of stalking encompasses the act of directing a third party to follow or harass a victim, then no distinct instruction on accomplice liability was necessary. Id.[2] While the Court of Appeals suggested that the law defining the crime must "specifically" refer to the actions of third parties, Becklin, 133 Wash.App. at 617, 137 P.3d 882, the plain language of RCW 9A.08.020(2)(b) contains no such requirement.
¶ 15 RCW 9A.46.110 defines the elements of stalking. According to the relevant portions of the statute:
(1) A person commits the crime of stalking if, without lawful authority and under circumstances not amounting to a felony attempt of another crime:
(a) He or she intentionally and repeatedly harasses or repeatedly follows another person; and
(b) The person being harassed or followed is placed in fear that the stalker intends to injure the person. . . . The feeling of fear must be one that a reasonable person in the same situation would experience under all the circumstances; and
(c) The stalker either:
(i) Intends to frighten, intimidate, or harass the person; or
(ii) Knows or reasonably should know that the person is afraid, intimidated, or harassed even if the stalker did not intend to place the person in fear or intimidate or harass the person.
RCW 9A.46.110 (emphasis added). For purposes of the stalking statute:
(a) "Follows" means deliberately maintaining visual or physical proximity to a specific person over a period of time. . . .
(b) "Harasses" means unlawful harassment as defined in RCW 10.14.020.

Former RCW 9A.46.110(6) (2006) (emphasis added). Under RCW 10.14.020:
(1) "Unlawful harassment" means a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, harasses, or is detrimental to such person, and which serves no legitimate or lawful purpose. The course of conduct shall be such as would cause a reasonable person to suffer substantial emotional distress, and shall actually cause substantial emotional distress. . . .
"Course of conduct" means a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose. "Course of conduct" includes in addition to any other form of communication, contact, or conduct, the sending of an electronic communication. Constitutionally protected activity is not included within the meaning of "course of conduct."
(Emphasis added.) Thus, according to the stalking statute, a defendant is guilty of stalking if he or she knowingly or intentionally engages in a repeated course of conduct, which can include "any . . . form of communication, contact, or conduct" that seriously alarms, annoys, harasses, or is detrimental to the victim such that it reasonably causes substantial emotional distress, so long as the course of conduct is not constitutionally protected. RCW 9A.46.110; RCW 10.14.020(2) (emphasis added).
¶ 16 The State asserts that directing others to follow or otherwise harass a victim can be a "form of communication, contact, or conduct" that amounts to harassment contemplated under the stalking statute. RCW 10.14.020(2). While the criminal stalking statutory scheme does not explicitly refer to harassment through third parties, the plain language of the definition of "course of conduct" seems to contemplate a broad range of harassing activities, which may include all types of communication, contact, or conduct that do not amount to activity protected by the constitution. Id. In sum, the plain language of the statute is broad enough to encompass the act of directing third parties to follow and intimidate a victim.
*948 ¶ 17 Moreover, the legislature has indicated that it intended a broad definition of the type of conduct that could constitute stalking or harassment. When it added electronic communications to the types of communications, contact, or conduct that could be considered stalking or harassment, it included the following statement of intent:
It is the intent of this act to clarify that electronic communications are included in the types of conduct and actions that can constitute the crimes of harassment and stalking. It is not the intent of the legislature, by adoption of this act, to restrict in any way the types of conduct or actions that can constitute harassment or stalking.

LAWS OF 1999, ch. 27, § 1 (emphasis added).[3] Thus both the plain language defining course of conduct and the legislative history suggest that the definition of conduct amounting to harassment is very broad and could include the manipulation or direction of third parties to achieve the intended emotional distress.
¶ 18 For support, the State also points to State v. Parmelee, 108 Wash.App. 702, 32 P.3d 1029 (2001). In that case, the defendant's stalking conviction was upheld where he took steps to convince fellow inmates to write sexually explicit e-mails to his estranged wife, convincing at least some of them that she would welcome such communications. Id. at 706-07, 32 P.3d 1029. The legal questions in that case involved whether the stalking conviction merged with a related conviction for violation of a protection order, and whether double jeopardy was violated. Id. at 709-10, 32 P.3d 1029. The opinion does not disclose whether any instruction was given to the jury regarding accomplice liability, or alternatively whether the State relied upon only the definition of stalking. See id. at 708, 32 P.3d 1029. Regardless, the opinion provides a striking factual example of a course of conduct that involved the manipulation of third parties to accomplish harassment and/or stalking.
¶ 19 The Court of Appeals in this case opined that Parmelee is distinguishable because there the relevant course of conduct was the solicitation of letter-writing from unwitting inmates. Becklin, 133 Wash.App. at 617, 137 P.3d 882. However, the Court of Appeals did not precisely explain why Becklin's course of conduct was particularly different from the solicitation in Parmelee. See id. Here the act of convincing his friends to harass McGee was the course of conduct that resulted in the impact on the victim, i.e., presumably "solicitation" and "convincing" are part of each scenario which leads to harassment.
¶ 20 We conclude that by defining "course of conduct" so broadly as to include any harassing communication, contact, or conduct that amounts to a series of acts over a period of time, the legislature contemplated that stalking, by definition, could include the direction or manipulation of third parties. RCW 9A.46.110; RCW 10.14.020. Because we read the stalking statute itself to prohibit directing a third party to harass the victim, the trial court's brief answer to the jury's question accurately reflected the law.
¶ 21 The Court of Appeals also complained that the judge's answer to the jury's question came too late to be a proper instruction. Becklin, 133 Wash.App. at 612, 137 P.3d 882. Superior Court Criminal Rule 6.15(f), entitled "Questions from Jury During Deliberations," provides, in part, that "[a]ny additional instruction upon any point of law shall be given in writing." CrR 6.15(f)(1). This portion of the rule necessarily assumes that additional instructions on the law can be given during deliberation. Whether to give further instructions in response to a request from a deliberating jury is within the discretion of the trial court. State v. Brown, 132 Wash.2d 529, 612, 940 P.2d 546 (1997); State v. Ng, 110 Wash.2d 32, 42-43, 750 P.2d 632 (1988). The Court of Appeals has held that the trial court should not be allowed to add a *949 legal theory of criminal culpability during deliberations if the parties have not had a chance to argue that theory. See State v. Ransom, 56 Wash.App. 712, 714, 785 P.2d 469 (1990). However, in this case both parties argued to the jury about the factual validity of the State's theory that Becklin was directing his friends to follow McGee. Given that both parties presented arguments on the theory, we conclude that the trial court acted within its discretion when it gave the jury further instruction on the law by answering its question.[4] We therefore reverse the Court of Appeals and affirm the conviction.

III

Conclusion
¶ 22 The trial court's brief answer to the jury's question accurately reflected the law: the definition of stalking includes directing or manipulating others to harass the victim. Thus, the trial court's answer to the jury question adequately apprised the jury as to the definition of the crime. In addition, the trial court did not abuse its discretion when it decided to give the jury further instruction on the law in response to the jury question because both parties had presented arguments as to whether Becklin had directed his friends to harass McGee. We therefore reverse the Court of Appeals and affirm the conviction.
WE CONCUR: SUSAN OWENS, MARY E. FAIRHURST, BARBARA A. MADSEN, JAMES M. JOHNSON and TOM CHAMBERS, Justices.
ALEXANDER, C.J. (dissenting).
¶ 23 I would have us affirm the decision of the Court of Appeals. I reach that conclusion because I entirely agree with the Court of Appeals that the challenged supplemental jury instruction came too late and, in addition, was entirely inadequate.
¶ 24 Insofar as the lateness of the jury instruction is concerned, the Court of Appeals correctly observed that "supplemental instructions may not go beyond matters that either had been, or could have been, properly argued." State v. Becklin, 133 Wash.App. 610, 620, 137 P.3d 882 (2006) (citing State v. Ransom, 56 Wash.App. 712, 714, 785 P.2d 469 (1990)). Here, the instruction that the trial judge gave in response to the jury's question introduced a theory that was not covered by the instructions that had been submitted to the jury at the close of all of the evidence.
¶ 25 The majority is untroubled by the tardiness of the jury instruction, indicating that because "both parties presented arguments on the theory" the instruction addressed, the trial court did not abuse its discretion in giving the instruction. Majority at 949. To say that the parties argued that Andre Becklin was responsible for the acts of others under the "course of conduct" language set forth in RCW 10.14.020(2) or under this state's complicity statute, RCW 9A.08.020, greatly exaggerates the thrust of trial counsel's arguments. Frankly, a thorough examination of the transcript of the prosecutor's closing argument leaves one confused as to precisely what the State's theory was. At one point the State argues that Becklin could be found guilty on an agency theory, saying: "Now, counsel makes a real big issue of the fact that Mr. Becklin did not personally do all of these acts. We have a concept of an agent, and a concept of principle [sic]. And what you ________ through your agent to do, you're responsible for." Report of Proceedings (RP) at 327. The prosecutor followed this with the remarkable statement that "[h]e who has the ability to prevent the act, who doesn't do it, it's the same as commanding that act." Id. Later on in argument, the prosecutor suggests accomplice liability is the State's theory, saying, "Assistance. Aiding and abetting. That's what it is, that's what this case is about, is enlisting others to do your own *950 dirty work, and that's what Mr. Becklin did." Id. at 331.
¶ 26 In sum, I agree with the Court of Appeals' decision here and its citation to an earlier Court of Appeals' decision in Ransom, 56 Wash.App. at 714, 785 P.2d 469, in which the court said the following:
It does not matter in this case that the court chose to give the instruction in response to a jury question. The effect was to add a theory that the State had not elected and that defense counsel had no chance to argue. The trial court erred in giving the . . . instruction after deliberations began.
¶ 27 Of greater concern to me than the timing of the instruction is its inadequacy as a statement of the law. In addressing that issue, I first observe that one has to be in a charitable mood to describe the trial judge's answer of "yes" to the jury's question as a jury instruction. Viewing the question and answer in that light, however, it can fairly be said that the instruction essentially tells the jury that a person can stalk someone through a third person. As a general proposition, a person can be criminally responsible for the conduct of another. Therefore, in an abstract sense, the instruction is a correct statement of law. The problem with the instruction is that it is incomplete in that it doesn't tell the jury under what circumstances a person can be legally accountable for another's conduct. We have a statute in Washington, RCW 9A.08.020[1], which speaks directly to criminal liability through complicity, and that statute could have formed the basis for a jury instruction. This would have made perfect sense since it is the State's contention, at least before this court, that Becklin had "others do what he could not" and that this was "a classic case for liability under RCW 9A.08.020(2)(a)." Suppl. Br. of Pet'r at 7. Consistent with this theory, the jury should have been told that Becklin is legally accountable for another's conduct only if he caused an innocent or irresponsible person or persons to engage in the criminal conduct. They were not so advised, and it is asking too much of individual jurors to expect them to know this intuitively.
¶ 28 The majority reaches the result the State urges, but it does so in a way that differs from the State's theory. It essentially holds that the judge's instruction (the answer to the jury's question) was adequate because Becklin's culpability arises from RCW 9A.08.020(2)(b), which provides that a defendant can be "accountable for the conduct of such other person by . . . the law defining the crime."[2] The majority reaches this result notwithstanding its observation that the stalking statute under which Becklin was charged, RCW 9A.46.110, "does not explicitly refer to harassment through third parties." Majority at 947. It is not troubled by this fact, however, observing that pursuant to former RCW 9A.46.110(6)(b) (2006) the term "`[h]arasses' means unlawful harassment as defined in RCW 10.14.020." Id. (emphasis omitted). The latter statute, it then notes, includes a broadly defined "knowing and willful course of conduct directed at a specific person." RCW 10.14.020(1). The majority then concludes, without citing any authority, that "the plain language of the statute is broad enough to encompass the act of directing third parties to follow and intimidate a victim." Majority at 948.
*951 ¶ 29 The trouble with this reasoning is that it flies in the face of the plain language of the statute under which Becklin was charged, RCW 9A.46.110(1)(a), which says that "[a] person commits the crime of stalking if . . . [h]e or she intentionally and repeatedly harasses or repeatedly follows another person." (Emphasis added.) The statute makes it clear, it seems to me, that the harassment must be committed by the defendant (he or she) in order for there to be culpability, and that the only way the reach of the statute can be broadened to cover accomplices or acts of third persons is through the aforementioned complicity statute. As noted above, that statute was not the subject of any instruction, nor was it properly argued to the jury.
¶ 30 In sum, Becklin is not accountable for the conduct of others by virtue of the law defining the crime with which he was charged. Although one may be culpable for the acts of others through Washington's complicity statute if he or she causes an innocent person or persons to engage in criminal conduct or is an accomplice of the person committing the unlawful acts, the jury should receive an instruction based on RCW 9A.08.020 if the State is advancing either theory. Because it did not receive such an instruction, Becklin's conviction should be reversed.
WE CONCUR: CHARLES W. JOHNSON and RICHARD B. SANDERS, Justices.
NOTES
[*] Justice Bobbe J. Bridge is serving as a justice pro tempore of the Supreme Court pursuant to Washington Constitution article IV, section 2(a).
[1] The information was amended several times, but the final version incorporated these charges.
[2] While the State seems to argue that Becklin's own acts of approaching McGee's house could support his conviction, the jury's question itself indicates that it was important whether stalking could occur by way of a third party. See State v. Davenport, 100 Wash.2d 757, 764, 675 P.2d 1213 (1984).
[3] The term "course of conduct" was originally defined in 1987 as an amendment to the unlawful harassment statute. LAWS OF 1987, ch. 280, § 2. The final bill report on the 1987 legislation explains that law enforcement had been frustrated with its inability to make arrests in many cases because prior law made only express threats illegal. FINAL BILL REP. ON SUBSTITUTE S.B. 5142, 50th Leg., Reg. Sess. at 1 (Wash.1987). The 1987 legislation (which included the "course of conduct" definition) was intended to protect victims from a wider range of conduct. Id.
[4] In his answer to the petition for review, Becklin, in one sentence, also disagrees with the Court of Appeals' conclusion that the trial court properly allowed multiple amendments to the information. Answer to Pet. for Review at 6. However, Becklin neglected to offer any legal analysis supporting this view. Absent any analysis, we conclude that Becklin has failed to offer any convincing argument that we should reverse the Court of Appeals on this issue.
[1] RCW 9A.08.020 provides, in pertinent part, as follows:

"(1) A person is guilty of a crime if it is committed by the conduct of another person for which he is legally accountable.
"(2) A person is legally accountable for the conduct of another person when:
"(a) Acting with the kind of culpability that is sufficient for the commission of the crime, he causes an innocent or irresponsible person to engage in such conduct; or
"(b) He is made accountable for the conduct of such other person by this title or by the law defining the crime; or
"(c) He is an accomplice of such other person in the commission of the crime."
[2] It must be noted that in the argument before this court, counsel for the State eschewed this theory, indicating in response to a question from this court that RCW 9A.08.020(2)(b) was "not at issue in the case." Wash. Supreme Court oral argument, State v. Becklin, No. 79354-9 (Nov. 27, 2007) at 31 min., 31 secs., audio recording by TVW, Washington's Public Affairs Network, available at http://www.tvg.org.